Bueord, J.
 

 Charles Ringling Company, a corporation, filed a suit against the city of Sarasota and Ebersbach Construction Company, a co-partnership, seeking to enjoin Ebersbach Construction Company from doing further improvement work on Lockwood Avénue in the City of Sarasota under a contract made with that company by the City in January, 1926, and to enjoin the City from paying out certain bond money, the proceeds of an issue of bonds by the City, for the purpose of paying for the work, and further to set aside and have declared null and void the improvement assessment theretofore made by the City upon certain real estate of the complainant abutting on said avenue.
 

 There was a final decree which came after final hearing upon the amended bill of complaint and the amendments thereto and the separate answer of the City of Sarasota and Ebersbach Construction Company, a co-partnership composed of Charles Ebersbach and Theodore Ebersbach, and evidence taken before the chancellor.
 

 The findings of the Court were: (1) that the equities were in favor of the complainant as between it and the City of Sarasota in respect to the assessment of the property complained of and set the assessment aside; (2) the equities in
 
 *1272
 
 favor of Ebersbaeh Construction Company as between it and the complainant and dismissed the bill, amended bill and amendments thereto as to Ebersbaeh Construetioh Company; (3) the equities in favor of Ebersbaeh Construction Company as between it and the City and dissolved an injunction previously granted restraining the City from paying out improvement bond moneys for work done, or to be done, on Lockwood Avenue by Ebersbaeh Construction Company under its contract.
 

 The City filed a petition for rehearing which was granted. Afterwards, parties strangers to the suit, Morningside, Inc., a corporation, and J. Paul Gaines, filed their petition for leave to intervene as taxpayers and citizens of the City of Sarasota. Appeal was taken from the order granting a rehearing and from the order allowing the named new parties to intervene. It appears to us that each order constituted error insofar as the same applied to Ebersbaeh Construction Company, the appellant here, for the reason that the findings of the chancellor as set forth in the final decree as to Ebersbaeh Construction Company were required by the pleadings and the proof as the same was presented to the chancellor and no contrary findings could have been based upon the pleading and proof without error having been committed thereby.
 

 It was not alleged that the validity of the contract was in anywise dependent on the validity of the assessment involved, nor that the validity of the assessment was dedendent on the validity of the construction contract between the city and Ebersbaeh Construction company.
 

 The city by its answer had denied that the contract was invalid and had denied that the work had been abandoned and upon hearing the city proved these allegations of its answer.
 

 The contract was made February 9th, 1926.
 

 
 *1273
 
 Section 2 of Chapter 13402, Special Acts of the Legislature of 1927, confirmed and validated all acts and proceedings of the city council of the City of Sarasota oecuring between January 1st, 1926, and the date on which this Act became a law, which was May 11th, 1927.
 

 The assessments were validated and approved insofar as it was competent for the legislature to approve such matter by provisions of Chapter 13403, Special Acts approved May 11th, 1927.
 

 In Barber Asphalt Paving Company v. City of Harrisburg, 64 Fed. R. 283, the Circuit Court of Appeals say:
 

 “Where a city having authority to pave its streets and pay therefor from its treasury, and supposing that it had authority also to assess the- cost on abutting property and transfer the assessments in payment for the work, contracts with a person, who also supposed it had such authority in regard to assessments, to do such paving, and to pay him by assigning the assessments to him, the city, not having in fact any authority to make the assessments, will be liable on the contract for the work, though it is stipulated that the assessments shall be accepted in payment, and that the city shall not be otherwise liable under the contract, whether the assessments are collectible or not. 62 Fed. R. 565, reversed.”
 

 In Hendry et al. v. Kellow et al., 94 Fla. 23, 114 So. R. 235, the Court say:
 

 “The legislature may approve, validate, and confirm any irregular or illegal contracts of a municipality which it could have legalized in the first place.”
 

 See also Jacksonville v. Basnett, 20 Fla. 525; Smith v. Longe, 20 Fla. 697; Parker v. Jacksonville, 37 Fla. 342,
 
 *1274
 
 20 So. R. 538; Cranor v. Volusia County Commissioners, 54 Fla. 526, 45 So. R. 455; Camp v. State, 71 Fla. 381; 72 So. R. 483; Charlotte Harbor & N. R. Co. v. Welles, 78 Fla. 227, 82 So. R. 770.
 

 After the motion for rehearing was granted the court granted a petition of Morningside, Inc., and J. Paul Gaines for leave to intervene. It will be observed from the record that Morningside, Inc., and J. Paul Gaines were strangers to the suit up to that time and there was no privity either claimed or shown to exist between those proposed intervenors and the original complainant. They did not purport or petition to intervene for the purpose of presenting any defense to the action brought by the complainant, but proposed to intervene for the purpose of making out a case against the defendants on their own behalf.
 

 The opinion in the case of Smith v. Elliott et al., 56 Fla. 849, 47 So. R. 387, sustains the proposition that intervention in equity suits by strangers to the record will not be allowed after final decree.
 

 In 21 C. J., page 346, the author states the law in regard to intervention as applicable here to be as follows:
 

 “An intervening party must be reckoned with in any final disposition of the cause; be becomes bound by the decree and may appeal. An intervenor must abide by the pleadings as he finds them at the time of his entry; he can not be heard to raise any new issue. Thus an intervener can not enlarge the scope of a suit by setting up a defense not open to defendant on the ground that, if he had been sued, such defense would have been available to him.”
 

 In Curtis v. Curtis, 180 Ala. 64, 60 So. R. 167, the Court say:
 

 
 *1275
 
 “Where one not a party to a pending suit has a claim or lien on the property or is interested in the subject-matter and desires for his own protection to intervene, to assert his independent right, and raise new issues, he must do so by a formal original bill in the nature of a cross or supplemental bill containing appropriate allegations. ’ ’
 

 See also Ex Parte Gray, 157 Ala. 358, 47 So. R. 286; Ex Parte Breedlove, 118 Ala. 172, 24 So. R. 363.
 

 In Ex Parte Gray,
 
 supra,
 
 the Court say:
 

 “It seems that the regular and orderly course of procedure is first to file an application for leave to file a petition of intervention, of which the parties to the suit should have notice. This is determined from the face of the application. If the allegations of the application show a case in which intervention should be allowed, the leave is granted.”
 

 The petition in this case shows that it was not the purpose of the interveners to defend against any allegations made by the complainant to the suit, but their purpose was to assert new and distinct rights of action in their own behalf against the defendants.
 

 The interveners claim that they as tax-payers will have a burden placed upon them by being required to pay the tax to create a sinking fund and a fund with which to pay interest. The record shows that the bonds involved had already long since been validated, issued and sold.
 

 In Abell v. Town of Boynton et al., 95 Fla. 984, 117 So. R. 507, this Court say:
 

 “Constitutional rights or privileges which are designed solely, for the protection of the property rights
 
 *1276
 
 of the individual concerned, and which he may waive or with reference to which he may estop himself, or as to which the legislature may lawfully limit the period of time within which such right or privileges may be exercised, may be put in repose by a- decree validating bonds pursuant to Section 3296
 
 et seq.,
 
 Rev. Gen. Stats, of Florida.”
 

 ‘ ‘ Constitutional and statutory rights, designed solely for the protection of the property rights of the individual may be waived, if not exercised under reasonable legal authority.”
 

 "When a property owner is on notice that improvements will be made and that all lands, including his own, will be assessed and bonds issued to pay for them, that the contract has been awarded, the work completed and the bonds issued and validated, and no resistance has been offered on his part, objection at this time comes too late.”
 

 In State v. City of Brooksville, 95 Fla. 141, 118 So. R. 13, the Court reaffirmed this holding.
 

 If we look to the original record in this case we find that neither of the proposed interveners were either a proper or necessary party to the suit; that is, there is nothing in their petition of intervention, or in the record otherwise, which shows that the complainant in the original suit had any cause or right to make these interveners parties to that suit.
 

 In Morgareidge v. Howey et al., 75 Fla. 234, 78 So. R. 14, the Court say:
 

 "The interest which will entitle a person to intervene must be in the matter of litigation, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation
 
 *1277
 
 and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to or lien upon the property or some part of it, which is the subject of the litigation.
 

 “Persons having an interest in the subject of a suit in equity and who are either necessary or proper parties to such suit, if not made so by the complainant, may come in by way of application to intervene and be made parties complainant or defendant, to the end that their interests may be adjudicated and protected in such suit.”
 

 The subject of the suit here was a tax sought to be levied on the property of Charles Ringling Company and neither of these petitioners are shown to have any interest either in the tax or in the lands described in the bill of complaint.
 

 For the reasons stated, we think the order appealed from insofar as it affects the appellants should be reversed and it is so ordered.
 

 Reversed.
 

 Whitfield, P. J., and Strum, J., concur.
 

 Terrell, C. J., and Ellis and Brown, J. J., concur in the opinion and judgment.